UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **NATIONAL AMERICA INSURANCE COMPANY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 05-5517** |
| **WIN-CON ENTERPRISES, INC., STAN C. RUYLE, JAMES LYNN PERKINDS, AND CATHERINE LADELL PERKINS** | **SECTION: "C"** |

### ORDER AND REASONS

Before the Court is a Motion for Partial Summary Judgment filed by Plaintiff, National American Insurance Company ("National American") (Rec. Doc. 14). Defendants, Stan Ruyle ("Mr. Ruyle"), James Perkins ("Mr. Perkins"), Catherine Ladell Perkins ("Ms. Perkins") and Win-Con Enterprises Inc. ("Win-Con," collectively "Defendants") oppose the motion. The motion is before the Court after oral argument. Having considered the arguments of counsel, the record and the applicable law, it is ordered that National American's motion is **PARTIALLY GRANTED AND PARTIALLY DENIED.**

### I. BACKGROUND

National American is a surety company that acts as a surety for certain contractors. Mr. Ruyle, Mr. Perkins and Ms. Perkins are officers, directors and shareholders of Win-Con, a contractor. On August 23, 1994, Win-Con, Mr. Ruyle, Mr. Perkins and Ms. Perkins executed a General Agreement of Indemnity and Financing Statement and Security Agreement ("Indemnity Agreement") with National American.[1] National American then acted as a surety for Win-Con.

---

[1] The Indemnity Agreement has a choice of law provision that provides for the application of Oklahoma law. See, Indemnity Agreement, paragraph 26.

Pursuant to the Indemnity Agreement, Defendants agreed to indemnify National American for all losses, including costs, expenses and attorneys' fees, incurred by National American in investigating, defending and resolving claims under the performance and payment bonds issued by National American on behalf of Win-Con. By its own terms, the Indemnity Agreement was a continuing obligation that applied to all bonds issued by National American on behalf of Win-Con.

This case arose out of a dispute concerning a construction project at Lambeth House, a retirement home in New Orleans, Louisiana. On July 22, 1996, Lambeth House, Inc. ("Lambeth") entered into a Standard Form Agreement Between Owner and Contractor with the general contractor, Weitz Company, LLC ("Weitz"). Then, Weitz entered into a Standard Form Subcontract Agreement Between Contractor and Subcontractor ("the Subcontract") with Win-Com, in which Win-Con agreed to provide and install aluminum windows for $437,017.00. The Subcontract also required Win-Con to provide a payment bond to Weitz. Win-Con obtained a Subcontract Performance Bond ("Performance Bond") and a Subcontract Labor and Material Payment Bond ("Payment Bond") from National American, which both named Win-Con as the principal and Weitz as the obligee. The Indemnity Agreement allegedly applied to both the Performance Bond and the Payment Bond. Weitz tendered its final payment to Win-Con under the subcontract on July 28, 1999. See, Rec. Doc. 14, Ex. C.

Due to water intrusion from alleged structural deficiencies, Lambeth sued the general contractor, Weitz, in the Civil District Court for the Parish of Orleans, State of Louisiana on September 19, 2003. Weitz and American Contractors Insurance Company subsequently filed a Third Party Demand against Win-Con on July 22, 2004, seeking indemnity for any damages

recovered by Lambeth resulting from any failure by Win-Con to perform its work in accordance with the Subcontract.  National American was then added as an additional Third Party Defendant on October 13, 2004.

As a result of the expenses and attorneys' fees that it incurred in the state court lawsuit to defend and resolve claims under the bonds it issued for Win-Con, National American filed this suit pursuant to diversity jurisdiction, seeking enforcement of Defendants' indemnity obligations under the Indemnity Agreement.  It filed this motion for partial summary judgment asserting that it is entitled to judgment as a matter of law, requiring Defendants to fulfill all obligations set forth in the Indemnity Agreement.  They claim that the terms of the Indemnity Agreement are clear and enforceable and that the Defendants have failed to fulfill their obligations under that agreement. Oral argument is set for November 8, 2006.

## II. ANALYSIS

### 1. CHOICE of LAW

A threshold issue in this case is what law applies.  The Indemnity Agreement, a contract, contains a choice of law provision that dictates that Oklahoma law will apply to it.  Neither party disputes that this is the case.

When a federal court has jurisdiction to hear a case based on diversity of citizenship of the parties, the court must apply substantive state law.  *Erie v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).  In cases where federal jurisdicion is founded on diversity and where there is a question as to which state's substantive law governs an issue in the case, the court is to look to the conflict of law rules in the state where the district court sits.  *Klaxon Co. v. Stentor*

*Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1021, 85 L.Ed. 1477 (1941).  Accordingly, Louisiana's choice of law rules control this Court's determination of which jurisdiction's substantive law applies to this case.

Louisiana Civil Code Article 3540 governs the choice of law for contracts.  It provides that the "law expressly chosen or clearly relied upon by the parties, except to the extent that the law contravenes the policy of the state whose law would otherwise apply will be applicable." LA. CIV. CODE. ANN. art. 3540 (West 2006).  In the Indemnity Agreement the parties agree that it will be governed by and construed according to Oklahoma law.  Thus, Oklahoma law applies to the interpretation of the parties' rights and obligations under the contract.

## 2. SUMMARY JUDGMENT

Summary judgment is only proper when the record indicates that there is not a "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.  A genuine issue of fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 247-48 (1986); see also *Taita Chem. Co. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001).  When considering a motion for summary judgment, this Court "will review the facts drawing all inferences most favorable to the party opposing the motion."  *Reid v. State Farm Mut. Auto Ins. Co.,* 784 F.2d 577, 578 (5th Cir. 1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, however, "the

burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995).  In order to satisfy its burden, the non-moving party must put forth competent evidence and cannot rely on "unsubstantiated assertions" and "conclusory allegations."  *See Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994); *Lujan v. Nat'l. Wildlife Fed'n.*, 497 U.S. 871, 871-73 (1990); *Donaghey v. Ocean Drilling & Exploration Co.,* 974 F.2d 646, 649 (5th Cir. 1992).

Under Oklahoma law, indemnity agreements are valid and enforceable.  *United States v. Hardge*, 985 F.2d 1427, 1434 (10th Cir. 1993) (citing *Fretwell v. Protection Alarm Co.*, 764 P.2d 149, 152 (Okla. 1988); Okal. Stat. tit. 15 § 421-30).  Indemnity agreements are contracts.  If a contract is unambiguous, courts will not look beyond the four corners of a contract to determine the intent of the parties.  *Nat'l Am. Ins. Co. v. Melancon*, 1999 WL 675417, *4 (E.D.La. 1999) (citing OKAL. STAT. tit. 15 § 155).  The parties' intentions must be deduced from the entire agreement, so as to give effect to each provision.  *Id.* (citing *Sullivan v. Gray*, 78 P.2d 688, 690 (Okla. 1938)).  Furthermore, courts cannot change the terms of an unambigous contract, but may simply interpret it.  *Williams Petroleum Co. v. Midland Cooperatives, Inc.*, 539 F.2d 694, 696 (10th Cir. 1976).

Here, National American claims that there is no genuine issue of material fact that the Indemnity Agreement is unambiguous and that it is entitled to indemnity from Defendants.  In making this argument, it relies on the terms of the indemnity agreement which provides in paragraph 2:

> <u>Indemnification.</u> The [Defendants] will perform all of the conditions of each bond or obligation, and any and all alternations,

> modifications, renewals, continuations and extensions thereof, and
> will at all times *indemnify* and save [National American] harmless
> from and against every claim, demand, liability, loss, cost, charge,
> *counsel fees*, fault, order, judgment (or other adjudication), and
> any expense or liability, of whatever nature <u>arising from or related
> to the execution of any such bond</u> or obligation upon demand <u>of
> [National American] and whether actually payable, paid or incurred at the time of demand</u>.

According to National American, this indemnity provision is unambiguous and binding with the effect that Defendants are liable to it for their attorney's fees incurred in the state court proceedings and this suit.

Defendants, on the other hand, argue that this provision is ambiguous or inapplicable in three respects. First, they argue that they are not liable to National American because National American has not actually paid any attorney's fees to their knowledge. Next, they claim that the indemnity provision is ambiguous as to whether they owe attorney's fees for this action as well as the state court action. Finally, Defendants question whether the attorneys fees were incurred in good faith and whether they are reasonable.

The Defendants' first argument is moot. Oklahoma law states that the indemnified party is not entitled to recovery until he actually pays a claim, cost, damage or demand. OKAL. STAT. tit. 15 § 427 (2006). However, National American attached copies of the checks that it issued to its attorneys in connection with all of the litigation to its reply memorandum. See, Rec. Doc. 27.

Most importantly, Defendants' claim that the indemnity provision is ambiguous as to which attorney's fees they owe. The language in question says that the Defendants must indemnify National American for attorney's fees "arising from or related to the execution of any such bond . . . whether actually *payable*, *paid* or *incurred* <u>at the time of demand</u>." The Defendants claim that one could construe "arising from the execution of the bond" to refer either

only to the state court suit or also this suit to enforce alleged obligations under the Indemnity Agreement.

The Court finds that the more reasonable interpretation is that the indemnification provision applies only those fees incurred in the state suit because they are directly related to the execution of the bond. The fees incurred herein are only tangentially related to the execution of the bond.[2] They are more directly related to enforcing the Indemnity Agreement. Fees incurred in enforcing the Indemnity Agreement are not covered according to the language of the agreement itself. Thus, the Court finds that the Defendants are not liable for the attorneys fees that National American incurred in bringing this lawsuit.

The Defendants are liable for the attorneys fees incurred by National American in the state court suit. Under the terms of the Indemnity Agreement, the Defendants are liable for the attorneys fees that are "payable, paid or incurred at the time of demand." National American made a "demand" on Defendants for attorney's fees by letter dated July 14, 2005. See, Rec. Doc. 1. In that letter it demanded indemnity per the terms of the Indemnity Agreement for attorney's fees that it had already incurred to that point. However, that letter also demands collateral and security under Louisiana Civil Code article 3053 for future attorney's fees and

---

[2] Defendants argue that the state court proceedings did not relate to the bonds. They claim that National American was sued for a duty owed under Louisiana insurance law. However, National American disagrees and asserts that it is not an insurance company, so the state court proceedings must have been about the bonds. National American filed a motion for summary judgment in the Civil District Court for the Parish of Orleans, State of Louisiana on this issue that was denied without reason. See, Rec. Doc. 27. This Court assumes that the state court proceedings concerned the bonds.

costs in the state court matter.[3]  Oklahoma, not Louisiana, law applies to the Indemnity Agreement. As a result, the Court finds that the demand for future attorneys fees made under a Louisiana law is ineffective.   Therefore, the Defendants are not responsible for at this time National American's attorney's fees incurred after July 14, 2005, the date of the demand letter.

Alternatively, Defendants argue that the Indemnity Agreement is no longer applicable because the bonds are void.  The Defendants claim that the validity of the indemnity agreement is tied to the viability of the bonds.  Specifically, the Defendants argue that, since the final payment to them as the subcontractor was due and rendered on July 28, 1999 and the state court action was not filed until September 19, 2003, that suit was not timely filed and thus the bonds were void and the Indemnity Agreement is not applicable.  Interestingly, National American made this same argument in the state court proceedings.  See, Rec. Doc. 20, Ex. 2. The motions in which that argument was made were denied without reasons.  See, Rec. Doc. 27.  Although National American does not abandon these arguments, they claim that they argued this in the state court is irrelevant because they are allowed to assert any defenses.

On the other hand, the Indemnity Agreement is "part of the consideration for the

---

[3] LA. CIV. CODE art. 3053 provides:
A surety, before making payment, may demand security from the principal obligor to guarantee his reimbursement when:
   (1) **The surety is sued by the creditor**;
   (2) The principal obligor is insolvent, unless the principal obligor is such that its performance does not require solvency;
   (3) **The principal obligor fails to perform an action promised in return for the suretyship;** or
   (4) The principal obligation is due or would be due but for an extension of its term not consented to by the surety.
The principal obligor may refuse to give security if the principal obligation is extinguished if he has a defense against it.

execution of [the] Bonds." Thus, it appears that the Indemnity Agreement's applicability depends on the viability of the bonds. However, the Indemnity Agreement was intended to be an ongoing contract that would apply to any future bonds issued by National American on Win-Con's behalf. Furthermore, the Indemnity Agreement has a termination clause which provides that it would "remain in full force and effect until terminated" by a prescribed mechanism. There is no evidence that the agreement was ever terminated in accordance with this clause. Thus, the Court finds that the Defendants' argument fails.

### III. CONCLUSION

For the reasons stated above,

IT IS ORDERED that National American's Motion for Partial Summary Judgment is hereby, **PARTIALLY GRANTED AND PARTIALLY DENIED** as follows:

1) Win-Con must indemnify National American for the attorneys fees that National American incurred in the state court proceeding up to July 14, 2005.

2) Win-Con is not liable to indemnify National American for the attorneys fees that National American incurred in this lawsuit.

New Orleans, Louisiana this 13th day of December, 2006.

                                          HELEN G. BERRIGAN
                                          UNITED STATES DISTRICT JUDGE